THE STATE ex rel. and to use of SCHOOL DIS-
TRICT OF SEDALIA, Appellant, v. HARTER
et al.

**Division One, May 24, 1905.**

1. **PUBLIC OFFICER:** Treasurer of School District. The treas-
urer of a school district is a public officer within the meaning
of the law.

2. ———: ———: **Limitation.** A suit on the bond of the
treasurer of a school district for failure to use the money of the
district entrusted to his care as directed by the board and in
pursuance to law, is barred by the three-year Statute of Lim-
itations, if not begun within three years after the cause of
action accrued—and in this case it is held that it accrued when
he failed to perform the duty imposed upon him by the board,
his bond and the statute.

3. ———: ———: **Ejusdem Generis: Other Officer.** The statute
provides that civil actions must be commenced within three
years after the cause of action shall accrue, "against a sher-
iff, coroner or other officer." *Held,* that the words "other offi-
cer" do not mean other officer of like kind, class or character
as a sheriff or coroner, such as constable, but any other public
officer, such as the treasurer of a school district.

4. ———: ———: ———: **Statutory Construction.** The rule of
*ejusdem generis* in the construction of statutes must not be
carried to such an extent as to nullify the plain meaning of
the statute or render meaningless any part of it.

Appeal from Pettis Circuit Court.—*Hon. George F.
Longan,* Judge.

AFFIRMED.

*J. H. Bothwell* and *Charles T. Yeater* for appel-
lant.

(1) The treasurer of a school district is neither
an officer within the meaning of section 4274, Revised
Statutes 1899, nor in the legal acceptation of the term,
because under section 9864 he is neither elected or ap-
pointed, but is chosen by the school board, and may or

may not be a member of the board, because no official oath, such as is prescribed by section 9760 for school directors, is required of him, which is a conclusive legislative construction that a school treasurer is not a public officer and not required to take the official oath prescribed by section 6 of article 14 of the Constitution. (2) The defendant school treasurer, even if held to be a public officer, cannot claim the benefit of the limitation of three years provided by section 4274, Revised Statutes 1899, because under the rule of *ejusdem generis* his office is not of the same class or kind as the elective offices of sheriff and coroner. State ex rel. v. Ennis, 79 Mo. App. 15; St. Louis v. Laughlin, 49 Mo. 559; Ex parte Neet, 157 Mo. 527. (3) This is an action founded solely upon a sealed paper writing, the bond described in the petition, for the payment of money, only one of the defendant obligors claiming to be an officer and all being equally liable, and only the limitation of ten years provided in section 4272, Revised Statutes 1899, applies, and consequently the suit was timely. Miner & Frees v. Howard, 93 Mo. App. 569; Adelbert College v. Railroad, 13 Ohio Cir. Ct. 590. (4) The demurrer admits the allegation of the petition, at the close thereof, to the effect that the defendant Harter, the treasurer of the school district, in addition to the various specified failures in duty, resulting in a loss of $30,000 to the district, also failed and refused to render any account of the moneys so lost, and failed to settle with the school board for moneys and funds received, and failed to present such settlement to the county clerk for a certificate of correctness and for a prima facie discharge, as required by section 9871, Revised Statutes 1899, and until such settlement is made and such certificate and the grant of the prima facie discharge is given the Statute of Limitations does not begin to run. State ex rel. v. Minor, 44 Mo. 373; Kirk v. Sportsman, 48 Mo. 383; State ex rel. v. Brawley, 109 N. C. 524; Nelson v. Barnett, 123 Mo. 572.

*Barnett & Barnett* and *Sangree & Bohling* for respondents.

(1)   (a)   The statute treats of the treasurer of the school board of a city, town or village school district, and speaks of him in set terms as an "officer," his public position as an "office," his bond as an "official bond," and his duties as "official duties;" hence, *ex vi termini,* he is a statutory officer by virtue of express law. R. S. 1899, secs. 9864, 9868, 9869, 9871. So, too, the office has an "official term," has an "expiration" of such term, and the incumbent thereof must settle with his "successor in office." R. S. 1899, sec. 9871. And it was carved out of the office of county treasurer, which officer was the custodian of all school moneys until the act relating to city, town and village schools created a new office, and gave a portion of the county treasurer's official duties to the treasurer of the school district.   (b)   There is no merit in appellant's contention that the statute is silent on the matter of his official oath, because a statutory requirement of an official oath is not requisite in Missouri. As to many officers, the statute makes no express provisions for an oath—the whole matter being regulated, once for all, by the Constitution. Constitution, art. 14, sec. 6. And the presumption is that Harter qualified by taking the oath. (c)   Nor is there merit in the contention that such an officer is not elected, but merely chosen by the school board; for vacancies on the school board are filled by the directors without election. R. S. 1899, sec. 6762. And can it be said that the director so selected is not an officer? So, too, a deputy sheriff is chosen by his principal and yet he is held to be an officer. State ex rel. v. Bus, 135 Mo. 332.   (d)   Furthermore, the office of treasurer of the school board of a town district is a "continuing one," it is "a public charge or employment;" it "receives its authority from the law and discharges some of the functions of government;" it

is a "public trust created by competent authority,"
and thus, by all recognized definitions, Harter, as treas-
urer of the Sedalia school district, was an officer. State
ex rel. v. Bus, 135 Mo. 331; Throop's Public Officers,
secs. 2 to 9. The treasurer of the school board of a
village district has been recognized as an officer by this
court. State ex rel. v. Dorton, 145 Mo. 304. (2) Harter
being an officer and, as shown by the petition, a liabil-
ity having been claimed as incurred by his alleged doing
of certain acts in his official capacity and in virtue of
his office, and by the omission of alleged official duties
during his term of office, commencing with July 1, 1889,
and ending July 1, 1890, the three-years' clause (sec.
4274) of the Statute of Limitations is a bar to recovery
—the suit having been brought October 11, 1898, and
the demurrer was properly sustained. This results
from the following propositions: (a) Because the
courts no longer look on statutes of limitation with dis-
favor nor construe them with harsh or refined techni-
calities, but apply them liberally to further their bene-
ficent purpose as statutes of repose. Potter's Dwarris
on Statutes and Constitutions, p. 148; Wood on Limita-
tion of Actions (1 Ed.), sec. 4, p. 5; Shelby County v.
Bragg, 135 Mo. 300. (b) The mere fact that the suit
is in form on the bond is not decisive of the question
as to what section of the Statute of Limitations gov-
erns. We must look deeper that the mere form or sur-
face of the suit for the cause of action which is what the
statute strikes at. As said by the courts in similar
cases, ". . . . the gist of the action is not the bond,
but the failure of the officer to discharge an official
duty, and it is the cause rather than the form of the
action upon which the limitation acts." State of Iowa
v. Dyer, 17 Iowa 223; Keokuk County v. Howard, 41
Iowa 11; Brady v. St. Joseph, 84 Mo. App. 403; Men-
ifee v. Arnold, 51 Mo. 538; State v. Conway, 18 Ohio
234. (c) The three-years section was applied to a suit
against an ex-officio recorder: Shelby County v.

Bragg, 135 Mo. 297. And to a suit on a bond of the clerk of the criminal court of St. Louis: State ex rel. v. Dailey, 4 Mo. App. 172. And to a suit on the bond of a circuit clerk. State ex rel. v. Stonestreet, 92 Mo. App. 214; County of Poweshiek v. Ogden, 7 Iowa 177. And to a suit against a county treasurer on his bond: State of Iowa v. Dyer, 17 Iowa 223; Keokuk County v. Howard, 41 Iowa 11; State v. Henderson, 40 Iowa 242. And to a suit against the successor to the clerk of the board of supervisors: Prescott v. Gonser, 34 Iowa 175. And to a suit against a clerk of the district court on his bond: Steel & Johnson v. Bryant, 49 Iowa 116. And to a suit against a deputy district clerk on his bond: Moore v. McKinly, 60 Iowa 367. In Indiana, where the statute is substantially ours, it has been applied to a suit against a county treasurer on his bond: Pickett v. State, 24 Ind. 366. And to a suit against a township trustee on his bond: Hawthorne v. State ex rel., 57 Ind. 286. And to a suit against a county auditor on his bond: Ware v. State ex rel., 74 Ind. 181. (3) The history of the enactment and its amendments amounts to a demonstration that the intent of the legislative mind was to make a broad and comprehensive limitation covering the official misfeasance and nonfeasance of all officers. Because: The statute as originally enacted did not include the words, ''or other officer.'' Laws 1848-9, pp. 74-5, sec. 5. These words were inserted for the first time, six years later, in the Revision of 1855 (2 R. S. 1855, p. 1084, sec. 4), and were self-evidently intended to supply the deficiency in the statute. Now, the deficiency could not have been in the office of constable, the only other officer nearly allied in official duties to sheriff and coroner, for the statute already provided a special limitation for him of two years. R. S. 1835, p. 116, sec. 4; R. S. 1845, p. 112, sec. 6; R. S. 1855, p. 347, sec. 6. This special limitation in relation to constables is carried forward in the Revision of 1865, in Wagner's Statutes and in the Re-

vision of 1879, and was changed to three years in 1889. R. S. 1889, sec. 2379. And is still found in our statute. R. S. 1899, sec. 882. But a deficiency in the statute did exist in relation to the misfeasance and non-feasance of "other officers," which was remedied by the Revision of 1855. (4) (a) The rule *ejusdem generis* is only one of the many rules of construction, and is merely an aid to the court in arriving at the real legislative intent. This intent must not be nullified. Bank v. Ripley, 161 Mo. 132; Kansas City v. Richardson, 90 Mo. App. 450; Ruckert v. Railroad, 163 Mo. 260; Black on Interpretation of Laws, pp. 143-4; Sutherland on Stat. Con., sec. 239, 279. (b) This rule can be invoked only where there is some ambiguity or obscurity in the legislative expression so that the intent is doubtful or uncertain. The rule is not made to create ambiguities nor will it be allowed to frustrate the plain legislative intent. Kansas City v. Richardson, supra; Ruckert v. Railroad, supra; St. Joseph v. Elliott, 47 Mo. App. 418; Kansas City v. Vindguest, 36 Mo. App. 584. (c) Where the particular words exhaust the class, the general words must be construed as embracing something outside of that class, for if the particular words exhaust the genus, there is nothing *ejusdem generis* left. Bank v. Ripley, 161 Mo. 126. (5) The cause of action commenced on the date of the breach of official duties between July 1, 1889, and July 1, 1890, and if the appellant would escape the running of the statute, it would have to allege some successful fraud, or concealment, or sinister contrivance on the part of Harter to escape discovery. Ware v. State, 74 Ind. 181; Shelby County v. Bragg, 135 Mo. 300; Moore v. Mining Co., 80 Mo. 90; Darnold v. Simpson; 114 Fed. 368.

MARSHALL, J.—This is a suit begun on October 11, 1898, upon a bond for $20,000 given by the defendant Harter, as treasurer of the relator school district, and is against the principal and sureties on the bond.

The trial court sustained a demurrer to the petition, and the relator appealed.

The petition alleges that the relator is a duly organized and existing body corporate; that on the 22d of June, 1889, the defendant Harter, a member of the board of directors of said school district, was elected to the office of treasurer of the board for the year commencing July 1, 1889, and thereafter on the next day executed his bond as such treasurer, with his codefendants herein as his sureties, and, "that said bond was so conditioned as to be null and void if said Morris Harter should render a faithful and just account of all money that might come into his hands as treasurer of the said board of directors of said school district, and if he should otherwise perform the duties of his office according to law;" that said bond was duly approved by the board, and has become misplaced or stolen or lost and cannot be filed with the petition; that on the 1st of January, 1883, said school district issued and sold thirty bonds of said district each for the sum of $1,000, expressed to be for value received, payable to the bearer in twenty years after date, redeemable at the pleasure of said school district at any time within five years from said date, at the American Exchange National Bank of New York, with six per cent interest per annum from date, payable semiannually, and that the said bonds were sold on the 3rd of November, 1883; that thereafter on the 25th of April, 1889, the board of directors of said school district ordered that the bonds aforesaid be refunded under the provisions of the statute laws of this State, and that for such purpose it was ordered that bonds of the amount of $30,000 be issued, bearing five per cent interest, payable in twenty years, with the privilege and option to redeem at any time after the expiration of five years, and that the secretary cause said bonds to be prepared and when prepared to be "exchanged for the outstanding bonds of the issue of January 1, 1883, or be sold for the purpose

of obtaining the money with which to pay off the outstanding issue aforesaid;'' that said refunding bonds were issued as ordered; that on the 25th of July, 1889, bids for the sale of said refunding bonds were opened by the board, and one James C. Thompson was found to be the best and highest bidder therefor, and his bid was accepted and the bonds were sold to him at the price of $30,000 and a premium of $365, ''and it was thereupon duly ordered by said board, at said meeting, that Thompson turn over the proceeds of sale, the purchase price of said bonds, at once;'' that pursuant to said order said refunding bonds were placed in the hands of defendant Harter, the treasurer of said board, to be turned over by him to said Thompson in exchange for said $30,000 and said premium, ''in order that said moneys should be used in paying off and discharging said 30 bonds of the issue of January 1, 1883, as aforesaid, and plaintiff avers that defendant Harter did not exchange said bonds for said money as aforesaid and use the same in paying off and discharging said bonds of the issue of January 1, 1883. And plaintiff says that on the contrary the said defendant Harter, the treasurer of the said school board of said school district, failed to perform the duties of his office according to law in this, namely: The said James C. Thompson, on or about the — day of November, 1889, paid to said Harter, as treasurer of said school district, $30,000 and more, for said bonds, for which he, the said Morris Harter, as said treasurer, delivered the said 30 bonds of the issue of April 25, 1889, to said James C. Thompson, and thereafter the said Harter delivered back to said James C. Thompson the said moneys, the proceeds, as aforesaid, for the sale of said bonds of the issue of April 25, 1889, and the said Thompson converted the same to his own use and benefit, and the said Thompson was, and now is, insolvent, and has fled from the country as a fugitive from justice and all of said moneys have thereby been wholly lost to the said school

district, and plaintiff avers that the said Morris Harter, the treasurer as aforesaid, has not rendered a faithful and just account of the moneys, and also avers that the said bonds of said issue of April 25, 1889, for which said moneys were first received as aforesaid, were sold by said James C. Thompson for value to various purchasers, and the same are now held and owned by various persons and are binding obligations upon the said school district. And plaintiff says that said defendant, Morris Harter, the treasurer of said school district as aforesaid, failed to perform the duties of his office according to law in this, namely: The said Morris Harter, treasurer as aforesaid, failed to use the said moneys, the proceeds aforesaid of the sale of said bonds of the issue of April 25, 1889, in discharging and paying off the said 30 bonds of the issue of January 1, 1883, and failed to procure and burn said latter bonds, by reason of which the same were negotiated and passed current in the market as unmatured negotiable instruments and commercial paper, and the same are now held by various purchasers in good faith for value, and are binding upon said school district, and which said bonds the said school district is bound in law to pay in full; and plaintiff says that the said defendant, Morris Harter, the treasurer of said school district as aforesaid, has not rendered a faithful and just account of the aforesaid moneys, the proceeds of the sale, as aforesaid, of said bonds of the issue of April 25, 1889, which came into his hands as such treasurer as aforesaid, and has failed and refused to render any account whatever of said moneys to said school district, and said defendant, Morris Harter, as treasurer as aforesaid, has not settled in accordance with the law with the said school district for the moneys and funds received by him as aforesaid for the said bonds of said issue of April 25, 1889, received by him as aforesaid, as such treasurer."

The prayer of the petition is for a judgment of

$20,000. The defendants demurred to the petition on the grounds, first, that the petition does not state facts sufficient to constitute a cause of action; second, because several causes of action, repugnant to each other, have been united and commingled with each other in said petition, and in the same count of the petition; third, because on the face of the petition the Statute of Limitations has run against the cause of action, if any, set forth in said petition.

## I.

The point most strenuously discussed by counsel is as to whether this action, which was begun on the 11th of November, 1898, is barred by the three-year Statute of Limitations, being section 4274, Revised Statutes 1899, which is the same as section 6776, Revised Statutes 1889.

That section of the statute provides the period within which civil actions shall be commenced, after the causes of action shall have accrued, and is as follows:

"Sec. 4274. Within three years: First, an action against a sheriff, coroner, or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty, including the non-payment of money collected upon an execution or otherwise; second, an action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the State."

The defendants contend that under said section this action is barred. The plaintiff contends that said section does not apply to this case, because, first, the treasurer of a school district is not an officer within the meaning of that section, nor in the legal acceptation of the term, because under section 9864 he is neither elected or appointed, but is chosen by the school board, and may or may not be a member of the board, and because no official oath, such as is prescribed by section

9760 for school directors, is required of him, which is a legislative construction that a treasurer of a school district is not a public officer, and further that he is not required to take the official oath prescribed by section 6 of article 14 of the Constitution; and further because the treasurer of a school district does not come within the specification of officers referred to in section 4274, nor is he of the same class or kind as the officers spoken of in that section, and, therefore, under the doctrine of *ejusdem generis,* such treasurer of a school district is not included. And from these premises the plaintiff contends that this being an action upon a bond, the ten-year Statute of Limitation, being section 4272, Revised Statutes 1899, applies.

The petition alleges that the defendant Harter was duly elected to the office of treasurer, etc., and that he, thereafter, duly filed his "official" bond as treasurer, which was approved and accepted by said board.

Section 9864, Revised Statutes 1899, requires the board of a school district to organize by electing a president, a vice-president, a secretary and a treasurer; the secretary and treasurer may or may not be members of the board.

Section 9871, Revised Statutes 1899, requires the treasurer to enter into a bond conditioned "that he will render a faithful and just account of all money that may come into his hands as such treasurer, and otherwise perform the duties of his office according to law."

Section 9869 provides that the treasurer "shall be responsible on his 'official' bond," etc.

Section 9871, Revised Statutes 1899, requires the treasurer to make annual settlements, and prescribes that, "at the expiration of his term of office said treasurer shall deliver over to his successor in office all books and papers, with all moneys or other property in his hands," etc.

Thus both the petition and the statute treat the position of treasurer of a school district as an "office" and designate his bond as an "official" bond.

In State ex rel. Blakemore v. Rombauer, 101 Mo. 499, this court, in construing the meaning of the term "the title to any office under this State," as employed in article 6 of section 12 of the Constitution, held, that there is a distinction between the term, "any State officer," as employed in that section, and the term, "involving the title to any office under this State," and, accordingly, held that where the title to any office under this State was involved this court had jurisdiction of the appeal, although the person filling the office was not a State officer within the meaning of that term as employed in the same section of the same article of the Constitution.

State ex rel. Macklin v. Rombauer, 104 Mo. 619, was a proceeding in prohibition to prohibit the St. Louis Court of Appeals from taking jurisdiction to oust the relator from the position of member of the school board in the city of St. Louis, and it was held, that the jurisdiction in such cases was lodged, by the Constitution, in this court, and not in the St. Louis Court of Appeals.

State ex rel. Rogers v. Rombauer, 105 Mo. 103, was a similar case. Those cases were bottomed upon the proposition that the title to an office under this State was involved, although the person was not a State officer within the meaning of the Constitution. Since the rendition of those decisions this court has entertained jurisdiction in cases seeking to oust school directors from their office on the ground that the case involved the title to an office under this State, although the person was not a State officer, and this, too, notwithstanding it has also been held that a school district is not a political subdivision of this State so as to confer appellate jurisdiction upon this court in cases where a

school district is a party. [School District v. Boyle, 182 Mo. 347.]

State ex rel. v. Bus, 135 Mo. 325, was a proceeding in *quo warranto* to remove the defendant from the office of member of the school board in St. Louis, on the ground that the defendant became incompetent to hold the office because he had accepted appointment as deputy sheriff of the city of St. Louis, and under the Constitution was forbidden to hold two offices at the same time. In that case MACFARLANE, J., speaking for the court, said: "A public office is defined to be 'the right, authority and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' [Mechem, Pub. Officers 1.] The individual who is invested with authority and is required to perform the duties is a public officer."

Tested by these rules a treasurer of a school district must be held to perform "some portion of the sovereign functions of the government to be exercised by him for the benefit of the public," and must therefore be a "public officer" within the meaning of the law. This was inferentially decided in State ex rel. v. Dorton, 145 Mo. 304, which was an action against the treasurer of a school district and which treated him as a "public officer," though the point was not specifically decided in that case.

## II.

Section 4274 provides that civil actions must be commenced after the cause of action shall accrue, within three years, "against a sheriff, coroner or other officer."

Relator contends that the treasurer of a school district is not a sheriff or coroner, and that the term "other officer," employed in the statute, following immedi-

ately after the specific enumeration of "sheriff," "coroner," means only such "other officer" as is of like kind, class or character as a sheriff or coroner.

There is no "other officer" of the same class, kind or character as a sheriff or coroner except a constable, and the term "other officer," employed in the section, could not have referred to a constable, because ever since 1835 there has been a separate statute limiting the time within which actions against constables must be commenced, which limitation was two years until 1889, when it was extended to three years. [R. S. 1835, p. 116, sec. 4; R. S. 1889, sec. 2377; R. S. 1899, sec. 882.]

The term "or other officer" was not in the original act of 1848 (Laws 1848-9, sec. 5, pp. 74-5), which related only to a sheriff or a coroner, but those words were inserted in the law in the Revision of 1855. [2 R. S. 1855, p. 1048, sec. 4.] That the Legislature did not intend that the words "or other officer" thus inserted after the words sheriff or coroner, should apply to a constable is clearly shown by the fact that in the Revision of 1855 there was a separate statute of limitations as to constables (R. S. 1855, p. 347, sec. 6), which limited such actions to two years.

It is one of the cardinal principles of construction of statutes that all the parts of the statute must, if possible, be given a meaning and effect. Under the construction contended for by the plaintiff, the amendment of 1855 putting in the words, "or other officer," would be utterly meaningless, for as they could not apply to any officer, except officers of the same class or kind as a sheriff or coroner, and as, at the same session, a separate statute of limitations as to actions against constables was carried into the revision, the term "or other officer" could not apply to anything.

The maxim, *"Ut res valeat magis quam pereat,"* applies to the construction of the statute, and destroys,

or shows the inapplicability of the doctrine of "*ejusdem generis*" contended for by the plaintiff.

In Bank v. Ripley, 161 Mo. l. c. 131, this court, per VALLIANT, J., said: "It is a rule of construction that a statute should be construed so as to give effect to all its words, if it can be done. Out of that rule grew the further rule on which respondent relies, that is, that when particular words of description are used, followed by general words, the latter are to be limited in their meaning so as to embrace only a class of the things indicated by the particular words. The learned counsel for respondent, after stating the rule in their brief, and citing authorities in support of it, say: 'The reason of the rule of construction announced in the foregoing cases is that if the general words were meant to embrace persons or things different in character and kind from those specifically enumerated, there would be no occasion at all for the specific enumeration.' The rule, therefore, accomplishes the purpose to give effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words. This subject has several times received the attention of this court. [State v. Pemberton, 30 Mo. 376; St. Louis v. Laughlin, 49 Mo. 559; State v. Bryant, 90 Mo. 534; State ex rel. v. May, 106 Mo. 488; State v. Dinnisse, 109 Mo. 434; St. Louis v. Lane, 110 Mo. 254; State v. Schuchmann, 133 Mo. 111.] But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule; it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument. It is a corollary to the first proposition above stated, that the statute must be construed to give effect to all its words. The rule itself must not be so construed as to

defeat that purpose. Whilst it is aimed to preserve the meaning of the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words, or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose.''

In Ruckert v. Railroad, 163 Mo. 260, this court had before it the act of March 26, 1887 (Laws 1887, p. 39; now sec. 6116, R. S. 1899) which provided, in section two, that, ''before granting any franchise for constructing or operating any elevated, underground, or other street railroad, on, over, or under any street or alley in any incorporated town or city,'' the city should, by ordinance, establish the route and the terms and conditions of the franchise, etc.; and the meaning of the term employed in the act, ''other street railway,'' was attempted to be confined to elevated and underground street railways, and was claimed not to apply to surface railways, the contention being based upon the doctrine of *ejusdem generis,* but it was said, GANTT, J., speaking for this court: ''Recognizing fully the usefulness of the rule of *ejusdem generis* in the construction of statutes, we understand that it must not be carried to such an extent as to nullify the plain intent of the statute,'' and accordingly it was held to apply to surface railways as well.

In Shelby County v. Bragg, 135 Mo. 291, the statute was held to apply to a suit on the bond of the clerk of the criminal court of St. Louis.

In State to use v. Dailey, 4 Mo. App. 172, the statute was held to apply to a suit on the bond of a circuit clerk. In State ex rel. v. Stonestreet, 92 Mo. App. 214,

the statute was held to apply to a clerk of the circuit court and his sureties on his official bond.

The statute of Iowa is almost identical with the statute of Missouri, and is as follows: "The following actions may be brought within the time herein limited respectively, after their causes accrue and not afterwards, except where otherwise specifically declared; . . . Three years: . . . those against a sheriff or other public officer, growing out of a liability incurred by the doing of an act in an official capacity or by the omission of an official duty, including the nonpayment of money collected on execution, within three years."

The Supreme Court of that State held the statute applicable to suits against officers other than sheriffs or coroners. In County of Poweshiek v. Ogden, 7 Iowa 177, it was applied to an action against a county judge on his bond. In State v. Dyer, 17 Iowa 223, and in Keokuk County v. Howard, 41 Iowa 11, and in State v. Henderson, 40 Iowa 242, it was applied to a suit against a county treasurer. In Prescott v. Gonser, 34 Iowa 175, it was applied to a successor to the clerk of the board of supervisors. In Steele & Johnson v. Bryant, 49 Iowa 116, it was applied to a clerk of the district court on his bond. In Moore v. McKinley, 60 Iowa 367, it was applied to a deputy district clerk on his bond.

The statute of Indiana is substantially like the statute of Missouri, and the Supreme Court of that State held that the statute applied to a suit against a county treasurer (Pickett v. State ex rel., 24 Ind. 366); to a township trustee (Hawthorn v. State ex rel., 57 Ind. 286); and to a county auditor (Ware v. State ex rel., 74 Ind. 181).

The conclusion necessarily follows, that section 4274 applies to a treasurer of a school district and bars a civil action against him and his sureties on his official bond, "upon a liability incurred by the doing of an act in his official capacity, or in virtue of his of-

fice, or by the omission of an official duty," etc., and as the failure of duty specified in the petition must have occurred during the defendant Harter's term of office, which expired on the 1st of January, 1890, and as this action was not begun until the 11th of October, 1898, the action is barred by limitation.

This conclusion renders it unnecessary to consider the other points involved in the case, and results in affirming the judgment of the circuit court. It is so ordered.

All concur, except *Lamm, J.*, who had been of counsel and therefore did not sit.