**STATE of Missouri, Respondent,**

v.

**PLASTEC, INC., Appellant.**

No. 74034.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 3, 1998.

Jerry Wayne Venters, John S. Pletz, Venters, Pletz and Reed, P.C., Jefferson City, for Appellant.

Randall M. England, Thomas I. Osborne, Mexico, for Respondent.

SIMON, Presiding Judge.

Plastec, Inc. (Plastec) appeals the judgment entered by the trial court for failing to insure its workers' compensation liability, a class A misdemeanor, pursuant to section 287.128.5 RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted), for which it was sentenced to a fine of $100 and a penalty of $25,000.

On appeal, Plastec contends that the trial court erred in finding that, under section 287.128.5, it lacked discretion to impose no penalty or a penalty of less than $25,000 and in imposing a penalty of $25,000 because the statute's language is ambiguous; furthermore, when the statute is interpreted *in pari materia* with section 560.021 and when the words and phrases in section 287.128.5 are defined correctly and strictly construed against the state, the trial court had discretion to weigh the circumstances of the case and impose no penalty or a penalty other than $25,000. We affirm.

We affirm the trial court's decision unless it erroneously declares or applies the law or

unless there is no substantial evidence to support it or it is against the weight of the evidence. *State v. Carnahan*, 912 S.W.2d 115, 120 (Mo.App. W.D.1995).

The record, viewed in a light most favorable to the judgment, reveals that Plastec began operations in Missouri in June 1993. Within a few months, its comptroller told its president, David A. Richard (Richard), that the former "was under too much pressure in his position" and "was going to be looking elsewhere for employment." Richard then "started going through [the comptroller's] responsibilities thinking that [Richard] would have to bridge any gaps should [the comptroller] leave prior to [Richard's] finding a replacement." Richard found Plastec's insurance files but had difficulty understanding them; therefore, he asked his insurance broker to review them. The broker recommended that Richard reinstate Plastec's workers' compensation insurance. Richard "was taken back" when he received this recommendation because he did not know that Plastec "did not have an insurance carrier for its Workers Comp." He immediately ordered coverage reinstated.

Plastec did not have workers' compensation insurance between July 20 and November 30, 1994. During this time, Plastec received two claims for workers' compensation: one from Deanna McAlpin (McAlpin) and another from a person who later withdrew it. McAlpin's claim remained pending during a time when Plastec had filed a petition for bankruptcy under Chapter 11. Plastec included her claim as a general unsecured claim of $64,000 in its Summary of Schedules of assets and liabilities. Nevertheless, Plastec contested the claim and settled it for $3500 during the course of the bankruptcy proceedings. Plastec also paid her medical bills of approximately $3300 and compensation of $867 for work lost as a result of her claimed injury. An administrative law judge and the bankruptcy court approved the settlement.

On July 10, 1995, the prosecuting attorney of Audrain County filed an information against Plastec and Richard, charging them with failing to insure workers' compensation liability in violation of section 287.128.5. At a hearing on June 24, 1997, upon a plea of guilty by Plastec, the State dismissed its charges against Richard. Plastec then presented evidence to attempt to mitigate any penalty that the court might impose. This evidence included the facts already summarized as well as the following additional information: (1) testimony by Richard that he brought a check with him on the day of the hearing to pay McAlpin's claim; (2) a pending *First Amended Plan of Reorganization*, which showed that Plastec planned to pay all general unsecured claims totaling approximately $1 million over a period of fifteen years; (3) testimony by Richard that the imposition of a $25,000 penalty would "have a direct negative result" on Plastec's ability to implement the planned reorganization and that Plastec "does [not] have the financial ability today" to pay such a penalty.

The State did not cross-examine Richard, Plastec's only witness, did not object to any of Plastec's evidence, and did not present any evidence of its own. Plastec then offered arguments concerning the imposition of a penalty by the court under section 287.128.5, which provides as follows:

> Any employer failing to insure his liability pursuant to this chapter shall be guilty of a class A misdemeanor and, in addition, shall be liable to the state of Missouri for a penalty in an amount equal to twice the annual premium the employer would have paid had such employer been insured or twenty-five thousand dollars, whichever amount is greater.

Plastec noted that its annual premium, when doubled, remained less than $25,000 and that $25,000 "is the greater amount." It contended that the use of the words "shall be liable" in the statute suggested that the trial court has discretion to impose a penalty of up to $25,000 or twice the annual premium, whichever is greater, "but is not required to impose a penalty in that greater amount." Plastec's attorney acknowledged that he could not find cases interpreting this subsection but stated that he had represented another Audrain County company which, in a similar case in which the attorney general's office participated, agreed to pay a penalty of $1000.

Later in the hearing, when Plastec's attorney stated that "the statute says that the corporation shall be liable to a penalty of up to that amount," the court interrupted him, noting, "It doesn't say up to." Nevertheless, Plastec maintained that the court had discretion to impose a penalty of a substantially smaller amount. It conceded that "some penalty would be warranted" but noted that it wanted to reorganize, pay its creditors, and survive and that paying a $25,000 penalty would "work a hardship on us in a bankruptcy proceeding." Additionally, it reminded the court that the company paid McAlpin's medical bills and settled her claim and that Richard did not know that his administrative staff had failed to maintain coverage.

In response, the prosecuting attorney noted that he had delayed this case until Plastec settled McAlpin's claim and that "that is why it is so old." He stated that he had agreed to recommend a $100 fine and to dismiss charges against Richard if Plastec satisfied or settled the claim. Finally, he noted that he "refused to agree to compromise anything on the penalty," stating, "the way I read the statute, it is a twenty-five thousand dollar claim. I think the legislature intended people to carry Workmen's Compensation insurance and intended to make it very dire on them if they didn't." The court then ruled as follows:

I can't see any discretion on the part of the Court under the statute. I don't think it is significant that it says, "shall be liable" rather than "shall pay." I mean, it would seem to me I am bound by the statute to impose a penalty of twenty-five thousand dollars, and the Court is going to impose that penalty on the plea of guilty by Plastec, Inc.

Plastec then appealed, arguing that section 287.128.5 authorizes a penalty of "up to," but not exceeding, $25,000. *State v. Plastec, Inc.*, 961 S.W.2d 906, 907 (Mo.App. E.D. 1998). The State argued that the court did not err in considering and deciding that a penalty in the amount of $25,000 was mandatory. Both parties briefed and argued only the issue of whether the authorized penalty was a mandatory sum of $25,000. *Id.*

We did not reach and did not decide the substantive dispute of the parties. Instead, noting that (1) under section 560.021.2, the appropriate sentencing statute, the criminal punishment of a corporation for a non-code offense may be a "fine" fixed by the court; and (2) the trial court failed to implement the recognized punishment, imposition of a fine, we cited Rule 30.01(a) and held that "[i]n the absence of a fine there is no final judgment from which defendant can appeal." We then added, "When and if the court imposes a fine, the court may reconsider whether or not to impose a penalty authorized by section 287.128.5." *Id.*

Following our dismissal of Plastec's appeal, the trial court held a re-sentencing hearing on March 5, 1998 and each party presented arguments. Plastec argued that it could not "talk the prosecutor out of that $25,000 penalty even with the passage of all this time." The prosecutor recommended a fine of $100 and a penalty of $25,000, which he "believe[d] the statute requires." The court then responded, in pertinent part, as follows: "All right. On defendant's plea of guilty, it is the judgment and sentence of the Court that defendant pay a fine of $100, and the Court imposes a penalty of $25,000, pursuant to statute."

■ In its sole point on appeal, Plastec contends that the trial court erred in finding that, under section 287.128.5, it lacked discretion to impose no penalty or a penalty of less than $25,000 and in imposing a penalty of $25,000 because the statute's language is ambiguous; furthermore, when the statute is interpreted *in pari materia* with section 560.021 and when the words and phrases in section 287.128.5 are defined correctly and strictly construed against the state, the trial court had discretion to weigh the circumstances and impose no penalty or a penalty other than $25,000.

■ As Plastec observed in its brief, the appeal in this case raises an issue of statutory construction. Statutory construction is a question of law, not fact; when the lower court rules on a question of law, it is not a matter of discretion. *State v. Ruch*, 926 S.W.2d 937, 938 (Mo.App. W.D.1996). The judgment of the trial court is afforded no

deference when the law has been erroneously declared or applied. When construing statutes, courts must endeavor to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. Legislative intent should be determined by considering the plain and ordinary meaning of the terms in the statute. Each word, clause, sentence, and section of a statute should be given meaning. *Id.*

■ Plastec argues that we implicitly have recognized that the trial court has discretion to impose a penalty or to impose no penalty at all. In support of its contention, it cites the following language from our opinion in *Plastec*, 961 S.W.2d at 907:

> The decision on imposing a penalty, if the court chooses to further punish defendant, will differ when the requirements of an appealable, final judgment on the conviction are met by the imposition of a fine, if any.... When and if the court imposes a fine, the court may reconsider whether or not to impose a penalty authorized by section 287.128.5.

Plastec has omitted two important sentences which appeared following the ellipsis in the previous quotation: "The trial court never reached and did not decide that question. For that reason we do not reach and do not decide the substantive dispute of the parties." *Id.* We did not decide the substantive dispute in the first appeal. Therefore, Plastec cannot rely upon dicta to support its argument.

Plastec also argues that the word "liable" in section 287.128.5 is ambiguous in that the word has a number of different meanings, including a "future possible or probable happening which may not actually occur." We disagree. A comparison of subsection 5 with subsection 3 of the same statute reveals that the legislature used the word "liable" in both subsections in a clear manner. Subsection 3 provides as follows:

> Any person violating any of the provisions of subsections 1 and 2 of this section shall be guilty of a class A misdemeanor and, in addition, shall be liable to the state of Missouri for a fine not to exceed ten thousand dollars or double the value of the fraud whichever is greater.

Analysis of subsections 3 and 5 reveals that they both employ the phrase, "shall be guilty of a class A misdemeanor and, in addition, shall be liable to the state of Missouri for." Whereas subsection 3 then reads, "a fine not to exceed ten thousand dollars or double the value of the fraud whichever is greater," subsection 5 reads, "in an amount equal to twice the annual premium the employer would have paid had such employer been insured or twenty-five thousand dollars, whichever amount is greater." The legislature employed the words "not to exceed" in subsection 3 but used the words "in an amount equal to" in subsection 5, thereby distinguishing the two subsections. Considering the plain and ordinary meaning of the terms in the statute, and giving meaning to each word, clause, sentence, and section of the statute, we find that the legislature intended to grant discretion in the application of subsection 3 but did not intend to grant discretion in the application of subsection 5.

■ Additionally, Plastec contends that section 560.021.2 applies in this case and grants the trial court discretion to impose no penalty or a penalty less than $25,000. We disagree. Section 560.021.2 provides as follows:

> In the case of an offense defined outside the code, if a special fine for a corporation is expressly specified in the statute that defines the offense, the fine fixed by the court shall be
>
> (1) An amount within the limits specified in the statute that defines the offense; or
>
> (2) Any higher amount not exceeding double the amount of the corporation's gain from the commission of the offense, as determined under section 560.011.

On its face, section 560.021.2 deals with fines, not penalties. As we stated in *Plastec*, 961 S.W.2d at 907, "The statutory penalty is 'in addition' to the misdemeanor" and is "not an alternative to a fine." In making its argument, Plastec treats the terms *fine* and *penalty* as interchangeable, failing to recognize the distinction evident in the statutory language of sections 287.128.5 and 560.021.2. Thus, section 560.021.2 does not authorize the court to impose no penalty or a penalty lower than $25,000.

Finally, Plastec argues that the legislature's modifications to the statute in 1993

indicate an intent to grant courts discretion in levying penalties. Plastec compares the present versions of subsections 3 and 5 of section 287.128 to the former versions. The former version of subsection 3, which was section 287.128.2 RSMo Supp.1992, read as follows: "Any person who violates any provision of subsection 1 of this section is punishable by a fine of up to ten thousand dollars." The former version of subsection 5, which was section 287.220.5 RSMo Supp.1992, in pertinent part, read as follows: "Penalty under this subsection shall be an amount equal to the annual premium the employer would have paid had he been insured or twenty-five thousand dollars whichever amount is greater; and any amount so collected shall go to the second injury fund." Plastec contends that, whereas subsection 3 and its precursor use relatively similar language, subsection 5 and its precursor use significantly different language in that the precursor states that the penalty "shall be" a certain amount but the current subsection 5 states that an employer "shall be liable for" a penalty of a certain amount. Again focusing upon the use of the word "liable," Plastec argues that the legislature "must have had a reason" to use that word.

As we noted earlier, both subsections 3 and 5 now use the word "liable"; in fact, both subsections use the same language surrounding that word. In ascertaining the intent of the legislature from the language used, considering the plain and ordinary meaning of the terms in the statute, and giving meaning to each word, clause, sentence, and section of the statute, it is reasonable that the legislature, in consolidating separate provisions relating to fraudulent claims and failures to insure into one statute, used similar language in subsections 3 and 5 for the sake of consistency. As we stated earlier, a comparison of subsection 5 with subsection 3 reveals that the legislature used the word "liable" in both subsections in a clear manner.

Judgment affirmed.

CRANE and MOONEY, JJ., concur.